**In the Matter of R.J.H., Petitioner.**

No. 00–1256.

Supreme Court of Texas.

Argued Oct. 17, 2001.

Decided May 30, 2002.

Ronald Earle, Travis County District Attorney, Lisa Dotin Stewart, Assistant District Attorney, Rae-Ann F. Allong, Travis County District Attorney's Office, Austin, for Petitioner.

Thomas Wyatt Robertson, Austin, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice JEFFERSON, and Justice RODRIGUEZ join.

Whether a juvenile's noncustodial, inculpatory statements, made after the juvenile has already given police a confession inadmissible under state law because a magistrate was not present, are nevertheless voluntary and therefore admissible without offense to the Fourteenth Amendment to the United States Constitution must be determined from the totality of the circum-

stances.[1] Our main inquiry here is whether the court of appeals correctly applied this test in holding that the admission of a juvenile's statements was error.[2] We hold that it did not and therefore reverse the judgment of the court of appeals and reinstate the trial court's adjudication of delinquency.

## I

### A

The record before us consists of the testimony of three Department of Public Service officers, Michael Scheffler, D.G. Elder, and Michael Telles, at a hearing on a motion to suppress evidence. We summarize their testimony as follows.

R.J.H., a sixteen-year-old boy, was a passenger in a car driven by his adult cousin, Pedro Ybarra, when they were stopped mid-afternoon by Officer Scheffler because neither was wearing a seat belt. When Ybarra could not produce a driver's license, Scheffler arrested him, and had the car inventoried and impounded. Scheffler noticed that there were no keys in the ignition and that the steering column had been "popped", indicating that the car may have been stolen. He also detected the odor of marijuana in the car and saw a marijuana cigarette in the ashtray. Scheffler asked R.J.H. whether the cigarette was his, and he admitted it was. In searching the car, Scheffler found an expensive set of golf clubs, some telephone equipment, and numerous compact disks and videotapes that had all been reported stolen from a residence the previous day.

Scheffler handcuffed R.J.H. and took him to Detective Elder's office at a local DPS station. Elder had R.J.H.'s handcuffs removed, determined that he should be released, and telephoned his father to come to the station and pick him up. While R.J.H. waited for his father to arrive, he was free to walk around the office, go to the rest room, and get something to drink. He also talked with Elder for a little while, explaining that he had dropped out of school in the eighth grade, had fathered a child, and was on probation. Elder testified that he did not suspect R.J.H. of theft of the property that had been found in the car but wanted to ask him about Ybarra's involvement with his father present.

After about an hour R.J.H.'s father arrived, and Elder asked if he could question R.J.H. further. R.J.H. and his father agreed. Elder gave R.J.H. his *Miranda*[3] warnings and then questioned him about the theft. R.J.H. said he had broken into a house and opened the door for Ybarra, and the two of them had carried off the property found in their car. R.J.H. stated that because he was a juvenile, he believed nothing serious would happen to him as a result of the crime. Elder did not take R.J.H. before a magistrate when R.J.H. began to implicate himself in the burglary because Elder did not consider R.J.H. to be in custody. Elder had R.J.H.'s statement reduced to writing, and R.J.H. and his father signed it. The two then left Elder's office.

Several days later, R.J.H. telephoned Elder and asked to change his written statement. He told Elder that he had committed the burglary by himself, that Ybarra had not been involved at all. After that conversation, Elder and R.J.H. spoke

---

1. *Griffin v. State,* 765 S.W.2d 422, 429–430 (Tex.Crim.App.1989); *see Colorado v. Connelly,* 479 U.S. 157, 169–170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

2. 28 S.W.3d 250 (Tex.App.-Austin 2000).

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

together several other times. R.J.H. repeatedly told Elder that he wanted to revise his written statement to take sole responsibility for the burglary, exonerating Ybarra. Based on what R.J.H. had told him before, Elder thought that R.J.H. believed the consequences would be less severe for himself than they would be for Ybarra if Ybarra, an adult, were charged with the crime. In the course of their conversations, Elder told R.J.H. that the burglary victims were anxious to recover all of the property taken, including an old Masonic ring that had been in the family for many years. Elder hoped to "guilt trip" R.J.H. into helping him locate the ring and other property, and R.J.H. did appear to cooperate, although no other property was found.

**4.** *See* TEX PENAL CODE § 30.02.

**5.** *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

**6.** TEX. FAM.CODE § 51.09:

§ 51.09. Waiver of Rights.
Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or the United States may be waived in proceedings under this title if:
(1) the waiver is made by the child and the attorney for the child;
(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;
(3) the waiver is voluntary; and
(4) the waiver is made in writing or in court proceedings that are recorded.

**7.** *Id.* § 51.095:

§ 51.095. Admissibility of a Statement of a Child.
(a) Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:
(1) the statement is made in writing under a circumstance described by Subsection (d) and:

**B**

The State petitioned for an adjudication that R.J.H. had engaged in delinquent conduct, namely burglary, a felony.[4] R.J.H. moved to suppress the written statement he gave to Elder on the ground that he had not been admonished of his rights by a magistrate as required by section 51.095(a)(1) of the Texas Family Code. Under the United States Constitution, a juvenile charged with delinquency is protected from self-incrimination and entitled to counsel and must be advised of these rights before being asked to make a statement while in police custody.[5] The Texas Family Code provides that a juvenile can waive his rights once he is in custody only if joined by his attorney[6] or if done in the presence of a magistrate.[7] R.J.H. also moved to suppress his later oral state-

(A) the statement shows that the child has at some time before the making of the statement received from a magistrate a warning that:
(i) the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;
(ii) the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;
(iii) if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state; and
(iv) the child has the right to terminate the interview at any time;
(B) and:
(i) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present, except that a magistrate may require a bailiff or a law enforcement officer if a bailiff is not available to be present if the magistrate determines that the presence of the bailiff or law enforcement officer is necessary for the personal safety of the magistrate or other court personnel, provided that the bailiff or law en-

ments to Elder because they were tainted by the inadmissibility of the earlier written statement. The State countered that R.J.H. was not in custody when he gave his written statement and therefore section 51.095(a)(1) was inapplicable.

The State called Officer Scheffler and Detective Elder to testify on the motion. R.J.H. did not testify and called only one witness, Officer Telles, who testified only about the inventory he conducted of the car. At the conclusion of the hearing the court stated on the record that it found that R.J.H. had been in custody when he gave his written statement but not afterward. The court ordered that R.J.H.'s written statement be suppressed but not his subsequent oral statements. Subject to this ruling, R.J.H. then pleaded "true" to the petition and was sentenced to intensive-supervision probation for one year. (The State did not argue in the court of appeals that R.J.H.'s plea of "true" fore-

closes appeal from the ruling on the motion to suppress, and thus has failed to preserve that argument. We therefore express no opinion on that issue.)

A divided court of appeals reversed.[8] The court agreed that R.J.H.'s written statement was inadmissible under section 51.095(a)(1) of the Family Code, but held that as a result his later oral statements were involuntary and therefore inadmissible under the Fourteenth Amendment.[9] The court also held that R.J.H.'s oral statements were inadmissible under section 54.03(e) of the Family Code, which provides in pertinent part: "An extrajudicial statement which was obtained without fulfilling the requirements of this title or of the constitution of this state or the United States, may not be used in an adjudication hearing."[10]

The State's petition for review challenges these holdings, and R.J.H. does not

---

forcement officer may not carry a weapon in the presence of the child; and

 (ii) the magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily, and if a statement is taken, the magistrate must sign a written statement verifying the foregoing requisites have been met;

 (C) the child knowingly, intelligently, and voluntarily waives these rights before and during the making of the statement and signs the statement in the presence of a magistrate; and

 (D) the magistrate certifies that the magistrate has examined the child independent of any law enforcement officer or prosecuting attorney, except as required to ensure the personal safety of the magistrate or other court personnel, and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights;

 * * *

 (b) This section and Section 51.09 do not preclude the admission of a statement made by the child if:

 (1) the statement does not stem from interrogation of the child under a circumstance described by Subsection (d); or

 (2) without regard to whether the statement stems from interrogation of the child under a circumstance described by Subsection (d), the statement is voluntary and has a bearing on the credibility of the child as a witness.

 * * *

 (d) Subsections (a)(1) and (a)(5) apply to the statement of a child made:

 (1) while the child is in a detention facility or other place of confinement;

 (2) while the child is in the custody of an officer; or

 (3) during or after the interrogation of the child by an officer if the child is in the possession of the Department of Protective and Regulatory Services and is suspected to have engaged in conduct that violates a penal law of this state.

 * * *

**8.** 28 S.W.3d 250 (Tex.App.-Austin 2000).

**9.** *Id.* at 254.

**10.** *Id.; see* Tex. Fam.Code § 54.03(e).

argue here that his later statements were inadmissible for any other reason. Thus, the only issues before us are whether R.J.H.'s later oral statements to Detective Elder were admitted either in violation of constitutional due process because they were not voluntary, or in violation of section 54.03(e) of the *Family Code*. We consider each issue in turn.

## II

The test for determining whether a confession was made voluntarily is well established: the totality of the circumstances surrounding the making of the confession must be examined to determine whether the confession was " 'the product of an essentially free and unconstrained choice by its maker' ".[11] Conversely, a statement is involuntary "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." [12]

Under federal law, whether a confession is voluntary is a mixed question of fact and law.[13] Appellate review of the trial court's findings of historical fact is deferential because the trial court is in a better position to weigh credibility and make such determinations, but review of the application of the law to the facts is de novo because the trial court is in no better position to decide legal issues than the appellate court.[14] The Texas Court of Criminal Appeals has stated that a trial court's ruling on a motion to suppress in a criminal case is reviewed by an abuse-of-discretion standard [15] and has not said whether that standard of review is different from the standard under federal law.[16] The Family Code, which governs juvenile delinquency proceedings in Texas, requires that they be conducted under the Texas Rules of Civil Procedure, except as to discovery, and under the Texas Rules of Evidence applicable to criminal proceedings.[17] These rules do not set a standard for appellate review of a ruling on a motion to suppress. Finding no rule, statute, or court decision that prescribes a standard of review of such a ruling in a juvenile case, we choose to use an abuse-of-discretion standard, which for purposes of this case at least we take to be essentially identical to the federal standard, because it seems to us to make the most sense and is most consistent with appellate procedure in civil cases generally. Thus, we defer to the trial court's findings of historical fact but determine de novo whether those facts show that a juvenile's statements were

11. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)); *accord, Haynes v. Washington*, 373 U.S. 503, 513–14, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *State v. Terrazas*, 4 S.W.3d 720, 723 (Tex.Crim.App.1999); *Griffin v. State*, 765 S.W.2d 422, 428 (Tex.Crim.App.1989); *Creager v. State*, 952 S.W.2d 852, 855 (Tex.Crim.App.1997).

12. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App.1995); *accord, Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("Absent [coercive] police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.").

13. *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).

14. *Id.*

15. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999).

16. *Henderson v. State*, 962 S.W.2d 544, 564 (1998).

17. TEX FAM.CODE § 51.17.

made voluntarily for purposes of constitutional due process.

 The Texas Code of Criminal Procedure requires trial judges to make written findings of fact in connection with rulings on motions to suppress,[18] and this requirement cannot be waived.[19] This rule does not apply in juvenile cases,[20] and there is no other requirement that findings be made in such cases. Neither the State nor R.J.H. requested written findings of fact in connection with the trial court's ruling on the motion to suppress, and the court made none, although it orally stated "findings" on the record as part of its explanation for its ruling. Absent findings of fact, we will "view the record in the light most favorable to the trial court's ruling," as we would for other rulings in civil cases.[21]

With respect to R.J.H.'s oral statements, the court of appeals concluded:

> Given (1) the undeniable connection between the earlier inadmissible statement and the later statements, indicating that [R.J.H.] would not have made the latter but for the former; (2) [R.J.H.'s] juvenile status; (3) [R.J.H.'s] belief that the written statement would be used against him; and (4) the paucity of evidence by the State to meet its burden to prove voluntariness, we conclude that, under the totality of the circumstances, [R.J.H.'s] statements to Elder requesting a revision of his written statement were not voluntary under the federal Due Process Clause.[22]

The first factor cited by the court references the "cat out of the bag theory", which, as described by the court of appeals,

> is based on the notion that once a defendant has confessed, but is not aware the confession cannot be used against him, he may feel he has nothing to lose by making additional incriminating statements; so burdened by the psychological pressure of the first confession, his resolve to remain silent may be broken, rendering any subsequent statements involuntary under the federal due process clause.[23]

This theory was discussed, and for the most part rejected, by the United States Supreme Court in *United States v. Bayer*.[24] There the Supreme Court explained:

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.[25]

A defendant's voluntary statement was not inadmissible, the Supreme Court conclud-

---

**18.** Tex.Code Crim. Proc. art. 38.22, § 6.

**19.** *Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim.App.1995) (citing *Bonham v. State*, 644 S.W.2d 5, 8 (Tex.Crim.App.1983)).

**20.** *See* Tex. Fam.Code § 51.17.

**21.** *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex.1993).

**22.** 28 S.W.3d at 254.

**23.** *Id.* at 252.

**24.** 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

**25.** *Id.* at 540–541, 67 S.Ct. 1394.

ed, merely because his prior statement was inadmissible. More recently in *Oregon v. Elstad*, the Supreme Court held that a statement is not made inadmissible by a prior inadmissible statement unless the impropriety in obtaining the first statement actually extended to the later one.[26] In the Supreme Court's words, "moral and psychological pressures to confess emanating from sources other than official coercion" are no concern of the due process guarantee.[27]

The "cat out of the bag" theory has been similarly limited by the Court of Criminal Appeals. In *Griffin v. State*, the court held that a juvenile's confession was not involuntary and inadmissible merely because she had made an earlier statement at a time when she had been warned of her rights only by a police officer rather than by a magistrate, as required by the Family Code.[28] To determine the admissibility of the later statement, courts must look to the totality of the circumstances to determine whether that statement was the product of official coercion.[29]

Thus, under both federal and state jurisprudence, R.J.H.'s later statements to Elder were not involuntary merely because he made his prior statement to Elder rather than to a magistrate as required by section 51.095(a)(1) of the Family Code. We assume, consistent with the trial court's exclusion of R.J.H.'s written statement, that R.J.H. was in custody when he gave Elder that statement, and therefore section 51.095(a)(1) was applicable. The statute prescribes requirements for the admissibility of a juvenile's statement, but it does not determine whether a statement is voluntary for purposes of due

process. R.J.H.'s written statement to Elder acknowledged that Elder had advised him of his constitutional rights and that he chose to make a statement "freely and voluntarily, without being induced by any compulsion, threats, promises, or persuasion". R.J.H. signed the statement, as did his father who was present throughout Elder's questioning. Elder's admonishments to R.J.H. satisfied the requirements of federal constitutional due process even though R.J.H. was not given the additional protections afforded juveniles by section 51.095 of the Family Code.[30] R.J.H.'s later statements were therefore not "fruit of the poisonous tree"—a prior coerced statement—because for purposes of due process under the federal constitution, there was no poisonous tree.

Nor were R.J.H.'s later statements themselves the product of coercion. R.J.H. initiated contact with Elder on more than one occasion. The two spoke together several times. R.J.H. even offered to lead Elder to unrecovered stolen property. The evidence certainly supports the trial court's determination that R.J.H. was not in custody when he made the oral statements to Elder. Furthermore, there is no indication that R.J.H. felt any pressure to talk to Elder because he had already given Elder a statement that inculpated him in the burglary. For one thing, he and his cousin, Ybarra, had been caught with stolen property in their possession, so that their complicity in the burglary was not wholly dependent on R.J.H.'s confession. And for another, R.J.H.'s efforts to take sole responsibility for the crime appear to have been consistently motivated by his belief that any punishment imposed

**26.** 470 U.S. 298, 311, 314, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

**27.** *Id.* at 304, 105 S.Ct. 1285.

**28.** *Griffin*, 765 S.W.2d at 431.

**29.** *Id.* at 430.

**30.** *See id.*

on him in the juvenile system would be less than the punishment his cousin, Ybarra, faced as an adult for the same crime. Elder did nothing to create or foster this belief in R.J.H. If R.J.H. thought he had nothing to lose by making the oral statements to Elder, it was not likely because he had already confessed, but because he had been caught and his previous experience with the juvenile justice system persuaded him that he would suffer no serious consequences.

The other three factors cited by the court of appeals in support of its conclusion add little. There is no indication that R.J.H.'s statements were coerced due to his age. R.J.H., 16, was already on probation, and he initiated some of the calls to Elder and met with him freely. Nor does R.J.H.'s belief that his written statement would be used against him—which is nothing more than the "cat out of the bag" theory restated—show coercion. The evidence is that R.J.H. made oral statements to Elder not because he thought he had nothing to lose after his written statement, but because he was afraid his cousin had much to lose if the written statement were not changed to shift all blame to R.J.H. Finally, while the evidence adduced by the State on the motion to suppress is by no means lengthy, the court of appeals did not suggest, and we cannot see, that the State ignored important evidence.

In the final analysis, the court of appeals made the inadmissibility of R.J.H.'s written statement virtually determinative of the inadmissibility of the later statements. In so doing, the court erred. The admission of the oral statements did not violate due process.

### III

The court of appeals suggested, and R.J.H. argues here, that his oral state-ments were inadmissible under section 54.03(e) of the Family Code,[31] which, as we have noted, excludes a juvenile's extrajudicial statements "obtained without fulfilling the requirements of this title or of the constitution of this state or the United States".[32] We have already concluded that R.J.H.'s oral statements were not obtained in violation of federal constitutional due process, and R.J.H. does not argue that the state constitution afforded him any greater due process protections. R.J.H.'s argument is only that the oral statements were obtained without fulfilling the requirements of the Family Code. Because we agree with the trial court that R.J.H. was not in custody when he made those statements, section 51.095(a)(1) is inapplicable. R.J.H. does not identify any other requirement of the Family Code that was not met.

R.J.H.'s argument is really that because Elder did not meet the requirements of section 51.095(a)(1) in obtaining his written statement, his later oral statements were thereby tainted. This, again, is simply the "cat out of the bag" theory that we have already rejected. The admission of R.J.H.'s oral statements was thus not precluded by section 54.03(e).

\* \* \* \* \*

For the reasons we have explained, we reverse the judgment of the court of appeals and reinstate the trial court's adjudication of delinquency.

Justice BAKER, Justice HANKINSON, and Justice O'NEILL, concur in the judgment only.

---

**31.** 28 S.W.3d at 254.

**32.** Tex. Fam.Code § 54.03(e).