Affirmed and Memorandum Opinion filed September 26, 2006








Affirmed and Memorandum Opinion filed September 26, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00556-CV

____________

 

IN THE MATTER OF F.C.W

 



 

On Appeal from the 314th
District Court

Harris County, Texas

Trial Court Cause No. 05-00746J

 



 

M E M O R A N D U M    O P I N I O N

Appellant, F.C.W., was adjudicated delinquent for the
offense of arson, placed on probation until his eighteenth birthday, and
ordered to pay restitution.  On appeal, F.C.W. challenges the trial court=s denial of his motion
to suppress oral statements he made to arson investigators.  We affirm.

I.  Factual and Procedural
Background








On the evening of August 20, 2004, fifteen-year-old F.C.W.
and his friend J.N. visited the home of a mutual friend, K. Allard.  At around
8:00 or 9:00 p.m., F.C.W. and J.N. left Allard=s house and walked
to the home of another friend, Priscilla, who lived nearby.  After Priscilla=s mother told the
pair that Priscilla could not see them that night, F.C.W. and J.N. walked back
to Allard=s house,[1]
passing the house where Stacey Hawileh lived with her father and younger
siblings.  A short time later, a passerby knocked on Mr. Hawileh=s door and told
him the truck in his driveway was on fire.[2] 
Mr. Hawileh extinguished the fire and called the police.  A member of the
Harris County Sheriff=s Department arrived, assessed the
situation, and called the fire marshal.  

About thirty minutes later, arson investigator Nathan Green
arrived.  He photographed the damage to the truck, examined the scene, and
concluded that arson was the likely cause of the fire.  Meanwhile, F.C.W. and
J.N. returned to Allard=s house and spent the night.  According to
Allard, the boys told him they had set a girl=s red truck on
fire.[3] 
The next day, Stacey Hawileh commented to Allard that her truck had been set on
fire, and Allard told her about F.C.W.=s and J.N.=s involvement. 
Stacey gave this information to her father, who repeated it to Investigator
Green.








On September 14, 2004, Green and a partner went to the
disciplinary school F.C.W. attended to speak with him about the incident. 
F.C.W. was summoned to the principal=s office where the
two investigators were waiting with the school principal.  The two
investigators were wearing polo-style golf shirts with the word AArson@ on them, and
their firearms were visible on their waistbands.  Green sat behind the
principal=s desk and conducted most of the interview.  F.C.W. sat in a chair opposite Green,
and the principal stood behind Green, in front of a door to the office.  There was
conflicting testimony as to where Green=s partner, Investigator
Bolton, was located.  F.C.W. testified that Bolton stood behind him, blocking
the remaining door to the office, but Green testified that Bolton sat beside
F.C.W.  Finally, F.C.W. testified that the office doors locked automatically
from the outside, but that he knew he could open the doors from the inside.  

The interview lasted twenty or twenty-five minutes.  It is
undisputed that the arson investigators did not inform F.C.W. of his right to
remain silent, consult an attorney, or have a parent or other adult present. 
According to Green, he told F.C.W. he was not under arrest and was free to
leave; however, F.C.W. testified that Green never told him he was free to
leave.  At trial, F.C.W. stated he felt scared during the interview, and Green
testified that F.C.W. cried briefly.  F.C.W. made no attempt to leave the
office or end the interview, and did not ask to speak to anyone or to have
anyone else present.  He admitted he was involved in the arson, but only in a
joint capacity with J.N., saying he was not quite sure who exactly started the
fire.[4] 
Green incorporated some of F.C.W.=s statements into
his report.  After the interview ended, F.C.W. returned to class.

On January 26, 2005, F.C.W. was charged with arson. 
Following a bench trial on April 18, 2005, F.C.W. was adjudicated delinquent
for arson, sentenced to probation until his eighteenth birthday, and ordered to
pay restitution of $935.00 to Mr. Hawileh. 








II.  Issues
Presented

In two issues, F.C.W. contends  the trial court erred by
admitting  statements he made to the arson investigators on September 14,
2004.  F.C.W. argues in his first issue that his statements were the product of
a custodial interrogation without the protections of Tex. Fam. Code Ann. ' 51.095(b) (Vernon
Supp. 2005), and are therefore inadmissible.  In his second issue, F.C.W.
argues that even if the interrogation is deemed non-custodial, the statements
were involuntary, and thus, their admission violated his right to due process.

III.  Analysis

A.      Nature of
the Interrogation

1.       Standard
of Review

A trial court=s ruling on a
motion to suppress is typically reviewed for abuse of discretion because the
trial court has the discretion to believe or disbelieve witness testimony.  Jeffley
v. State, 38 S.W.3d 847, 853 (Tex. App.BHouston [14th
Dist.] 2001, pet. ref=d) (citing Johnson v. State, 871
S.W.2d 744, 748 (Tex. Crim. App. 1994).  Almost total deference is given to the
trial court=s rulings on mixed questions of law and fact that are
based on an evaluation of credibility and demeanor.  Id. (citing Loserth
v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)).  However, mixed
questions of law and fact that are not based on evaluations of credibility or
demeanor, such as the question of whether an interrogation is custodial, are
reviewed de novo.  Id. 

2.       F.C.W.=s Interrogation
Was Not Custodial








Section 51.095 dictates that certain requirements must be
met for a juvenile=s statements to be admissible. See Tex. Fam. Code Ann. ' 51.095.  However,
when a juvenile makes voluntary oral statements that do not arise from
custodial interrogation, the statute does not require the statements to be
excluded.  See Tex. Fam. Code Ann.
' 51.095(b)(1), (d). 
Here, it is undisputed that the requirements of section 51.095 were not met at
the time F.C.W. made his statements to the arson investigators.  Thus, the
outcome of F.C.W.=s first issue depends on whether the questioning
in the principal=s office was custodial.

In general, a person is in custody if a reasonable person
under the same circumstances would believe that his freedom of movement was
restrained to the degree associated with a formal arrest.  Dowthitt v. State,
931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing Stansbury v. California,
511 U.S. 318, 320, 114 S. Ct. 1526, 1528B30, 128 L. Ed. 2d
293, 298B99 (1994)).  When
the person involved is a minor, courts consider the age of the defendant and
all the circumstances surrounding the interrogation to decide whether there was
a formal arrest or a restraint of movement to the degree associated with formal
arrest.  In re V.P., 55 S.W.3d 25, 31 (Tex. App.CAustin 2001, pet.
denied). Stated another way, the court=s inquiry is
whether, based on the objective circumstances, a reasonable child of the same
age would believe his or her freedom of movement was significantly restricted. 
Id.  The factors relevant to the determination of whether a whether a
child is in custody include whether there was probable cause to arrest; the
focus of the investigation; and to the extent communicated or manifested, the
officer=s subjective
intent and the child=s subjective beliefs.  Dowthitt,
931 S.W.2d at 254.

We first examine whether arson investigators had probable
cause to arrest F.C.W. at the time of the interview.  A law enforcement officer
has probable cause to arrest when the facts and circumstances within the
officer=s knowledge and of
which he has reasonably trustworthy information are sufficient to warrant a
prudent person in believing that the arrested person had committed an offense. 
Beverly v. State, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990).  Here,
Green had been told by two other students at the disciplinary school that
F.C.W. was involved in the crime, but Green had no corroborating evidence, and
the teenagers could have been motivated by other factors.  On this record, we
cannot say that the information was sufficient to provide Green with probable
cause to arrest F.C.W.        








We next examine the manifested intent of the
investigators.  According to Green,  he told F.C.W. he was not under arrest and
was free to leave.  F.C.W. was not placed in handcuffs at any point during the
interview, and although F.C.W. testified that he believed the doors of the
office locked automatically, he also testified he knew he could open the doors
from the inside.  It is also undisputed that F.C.W. never attempted or asked to
leave the office or to speak to his parents, a lawyer, or a trusted adult. 
Although F.C.W. testified that the investigators told him they had a videotape
of the incident, the trial court was free to disbelieve this statement, and
hence, to find that the officers did not manifest an intent to arrest F.C.W.  See
Marsh v. State, 140 S.W.3d 901, 905 (Tex. App.CHouston [14th
Dist.] 2004, pet. ref=d) (AThe trial court is
the exclusive fact finder in a motion to suppress hearing, and, therefore, it
may choose to believe or disbelieve any or all of a witness=s testimony.@).

We conclude that, although a reasonable fifteen-year-old in
this situation could have felt his freedom of movement was restricted, he would
not have felt that his freedom of movement was restrained to the degree
associated with a formal arrest.[5] 
F.C.W. was never handcuffed, and the trial court could have found that F.C.W.
was told he was free to leave.  Although F.C.W. was  the focus of the investigation,
he was not in custody when he spoke to the arson investigators.  Because only a
custodial interrogation invokes the  protections of section 51.095 of the
Family Code, the absence of those safeguards does not render F.C.W.=s statements
inadmissible.  We overrule F.C.W.=s first issue.

B.      Voluntariness of
the Statements

F.C.W. next argues that, regardless of whether the
interrogation is deemed non-custodial, his statements should not have been
admitted because they were not voluntary and he did not voluntarily waive any
rights.








1.       Standard of Review

We do not disturb the trial court=s ruling as to the
voluntariness of a waiver or confession unless there is a clear abuse of
discretion.  Whitmire v. State, 183 S.W.3d 522, 528 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (citing Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995)).  When the determination revolves around historical
facts and witness credibility, we give the trial court almost total deference. 
Ross v. State, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc)
(citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.1997) (en
banc)).  However, we review the application of the law to the facts de novo.  In
re R.J.H., 79 S.W.3d 1, 6 (Tex. 2002) (discussing standard of review in the
context of a juvenile delinquency proceeding).

2.       F.C.W.=s Statements Were
Voluntary          

For a statement to be involuntary, there must have been A>official, coercive
conduct of such a nature that any statement obtained thereby was unlikely to
have been the product of an essentially free and unconstrained choice by its
maker.=@  In re R.J.H.,
79 S.W.3d at 6 (quoting Alvarado v. State, 912 S.W.2d 199, 211 (Tex.
Crim. App. 1995)).  In this case, the conduct of the arson investigators
was not so coercive to have caused F.C.W. to make statements that were not the
product of free and unconstrained choice.  F.C.W. identified no conduct or
statements by the investigators that he considered threatening or intimidating,
nor does F.C.W. contend he was promised anything in exchange for his
cooperation.  See In re Z.L.B., 115 S.W.3d 188, 191 (Tex. App.CDallas 2003, no
pet.) (citing the absence of a detective=s promise in
exchange for the appellant=s written statement as a factor in
determining the statement was voluntary).  The interview took no longer than
twenty-five minutes, and at no time did appellant indicate a desire to speak
with his parents or an attorney.  Although F.C.W. was not asked if he wised to
speak to a parent or trusted adult or have such a person present, these
protections were not required in a non-custodial interview such as this. 








On the record before us, and presuming as we must that the
trial court made all findings of fact consistent with its ruling, we cannot
conclude that the trial court abused its discretion in admitting F.C.W.=s statements. 
Thus, we overrule appellant=s second issue.

IV.  Conclusion

For the foregoing reasons, we hold the trial court did not
abuse its discretion in denying the appellant=s motion to
suppress the statements he made to arson investigators.  Accordingly, we affirm
the judgment of the trial court.

 

 

 

/s/      Eva M. Guzman

Justice

 

Judgment rendered
and Memorandum Opinion filed September 26, 2006.

Panel consists of
Chief Justice Hedges and Justices Yates and Guzman.

 









[1]  According to F.C.W.=s testimony at trial, he and J.N. were casually lighting pine needles
with lighters and letting them burn.  J.N. denied this.





[2]  F.C.W. testified that he had picked up a newspaper
in plastic wrapping, and that J.N. took the newspaper, shoved pine needles into
it, lit the pine needles, and threw the package into the bed of Mr. Hawileh=s truck.  Although J.N.=s testimony agreed with F.C.W.=s
testimony regarding the means used to start the fire, J.N. testified that
F.C.W. ignited the pine needles and threw the newspaper into the truck.





[3]  Allard also testified that F.C.W. insulted J.N. for
not helping him do it or fully participating.





[4]  This is based on the following exchange between
appellant=s attorney and Green:

Q:         And your report just mentioned
that you interviewed [F.C.W.] and that he said that he and [J.N.], from your
statements today, he and [J.N.] placed pine needles and newspapers into the
back of the truck; is that correct?

A:         Correct, yes, sir.

Q:         Did he mention who started the
fire?

A:         No, he did not.

Q:         No?

A:         They just made reference to
both of them being there.

Q:         Okay.  Did he tell you that
[J.N.] might have started the fire?

A:         Actually, I believe the comment was made that he wasn=t quite sure or remembered who set that particular
fire.





[5]  Although not essential to our disposition, we note
that F.C.W. had been arrested before, and thus would not equate an interview in
the school principal=s office with the significant restraint on freedom of
movement associated with a formal arrest.