

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00067-CV

In the Matter of **B.S.P.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2012JUV01933
The Honorable Carmen Kelsey, Judge Presiding

Opinion by:      Karen Angelini, Justice

Sitting:      Catherine Stone, Chief Justice
             Karen Angelini, Justice
             Rebeca C. Martinez, Justice

Delivered and Filed:  October 29, 2014

AFFIRMED

A jury found B.S.P., a juvenile, had engaged in delinquent conduct by committing the offense of aggravated sexual assault of a child under the age of fourteen. The trial court assessed a determinate sentence of six years, probated, in the custody of the Bexar County chief juvenile probation officer. On appeal, B.S.P. argues the trial court abused its discretion when it denied his motion to suppress a statement he made to the complainant's mother. We affirm.

## BACKGROUND

On June 17, 2012, at around 11:00 p.m., the complainant, who was eleven years old, told his mother that he had been sexually assaulted by B.S.P., who was sixteen years old. The complainant and his mother were living with B.S.P. and his family. The assault had occurred two days earlier. After hearing the details of the assault, the complainant's mother decided to talk to

B.S.P.'s mother about the assault. After learning of the complainant's allegation, B.S.P.'s mother awakened B.S.P., who was asleep in his bedroom. B.S.P. and his mother then went to the dining room to talk to the complainant's mother, who asked B.S.P. if he knew anything about the assault and if he had in fact assaulted the complainant.

Witnesses offered somewhat different accounts of the exchange that took place between the complainant's mother and B.S.P. Nevertheless, it was undisputed that, at some point, B.S.P. asked the complainant's mother whether she would call the police if he told her what happened, and the complainant's mother said she would not call the police. B.S.P. then stated, "Okay, yeah, I did. I did it." Thereafter, both B.S.P.'s grandmother and the complainant's mother called 9-1-1 and the police were dispatched to the residence to investigate.

At the suppression hearing, B.S.P. challenged the admissibility of his statement, "Okay, yeah, I did. I did it." B.S.P. argued his statement should be suppressed because it was involuntary. The trial court disagreed, explained its ruling on the record, and denied the motion to suppress. Written findings of fact were not requested or filed. The matter was subsequently tried to a jury, which was instructed that it should not consider B.S.P.'s statement unless it believed beyond a reasonable doubt that the statement was freely and voluntarily made. The jury found that B.S.P. engaged in delinquent conduct as alleged by the State. B.S.P. appealed.

## STANDARD OF REVIEW

We review a ruling on a motion to suppress in a juvenile case using the same standard of review that applies in an adult criminal case. *In the Matter of R.J.H.*, 79 S.W.3d 1, 6-7 (Tex. 2002). In an adult criminal case, the trial court's ruling on a motion to suppress based on the voluntariness of a defendant's statement is reviewed for an abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). Under this standard, we defer to the trial court's findings of historical fact, but determine de novo whether those facts show that the juvenile's statements were

made voluntarily. *R.J.H.*, 79 S.W.3d at 6-7. Our review of findings of historical fact is deferential because the trial court is in a better position to weigh credibility and make such determinations; however, our review of the application of the law to the facts is de novo because the trial court is in no better position to decide legal issues than the appellate court. *Id*. at 6. Absent findings of fact, we review the record in the light most favorable to the trial court's ruling, as we would for other rulings in civil cases. *Id*. at 7. When, as here, the voluntariness of a statement is consensually re-litigated at trial, we are not limited to the evidence presented at the suppression hearing; we may also consider the evidence presented at trial. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

## DISCUSSION

Juvenile proceedings are quasi-criminal in nature. Therefore, when analyzing juvenile proceedings, courts sometimes consider analogous cases in similar adult proceedings. *In the Matter of T.W.C.*, 258 S.W.3d 218, 222 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *In the Matter of D.I.B.*, 988 S.W.2d 753, 757 (Tex. 1999)). At a suppression hearing, the burden of proof is on the State to prove by a preponderance of the evidence that the challenged statement was given voluntarily. *Alvarado*, 912 S.W.2d at 211. In considering the voluntariness of a juvenile's statement, we examine the totality of the circumstances. *R.J.H.*, 79 S.W.3d at 8. If the circumstances show the juvenile was threatened, coerced, or promised something in exchange for the confession, the confession is involuntary. *In the Matter of J.L.*, No. 10-06-00246-CV, 2007 WL 3298920, at *2 (Tex. App.—Waco 2007, no pet.) (citing *Darden v. State*, 629 S.W.2d 46, 51 (Tex. Crim. App. 1982)).

B.S.P. first argues his statement, "Okay, yeah, I did. I did it," was involuntary because it was induced by a promise from the complainant's mother that she would not call the police. B.S.P. acknowledges that most cases challenging the voluntariness of statements or confessions involve

statements made to police officers or their agents. However, B.S.P. points out that the voluntariness of a statement or confession may also be challenged when it is induced by a promise made by a person other than a police officer, provided that the person is a person in authority.[1] *See Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964) (holding that the issue of the voluntariness of a confession should have been submitted to the jury when the defendant confessed to stealing property from his employer after his employer promised he would not press charges, call the police, or fire the defendant). B.S.P. maintains that his statement to the complainant's mother was involuntary because it was induced by her promise not to call the police.

In order for the statement of an accused to be involuntary because it was induced by a promised benefit, the promise must: (1) be of some benefit to the defendant; (2) be positive; (3) be made or sanctioned by a person in authority; and (4) be of such character as would be likely to influence the defendant to speak untruthfully. *Id*.; *Dixon v. State*, 624 S.W.2d 373, 374 (Tex. App.—Dallas 1981, no pet.). As to the third factor, whether the person making the promise is a person in authority, courts consider the actual relationship between the parties as it appeared to the person making the statement. *Fisher*, 379 S.W.2d at 902; *Dixon*, 624 S.W.2d at 374. As to the fourth factor, whether the promise was of such character as would be likely to influence the defendant to speak untruthfully, courts consider whether the circumstances of the promise made the defendant inclined to admit to a crime he had not committed. *Wayne v. State*, 756 S.W.2d 724, 730 (Tex. Crim. App. 1988). "[I]f the influence applied was such as to make the defendant believe his condition would be bettered by making a confession, true or false, then the confession should be excluded." *Fisher*, 379. S.W.2d at 902.

---

[1] In his brief, B.S.P. makes clear that his argument is not based on federal constitutional law.

Even if we assume that the first two factors described in *Fisher* were satisfied here, the third and fourth factors were not. The evidence showed that the complainant's mother was a family friend and a guest in the house belonging to B.S.P.'s family. At the time B.S.P. made the statement, B.S.P. was seated at the table in his own home. His mother and grandmother were seated next to him. B.S.P. initially refused to answer the questions posed by the complainant's mother and later expressed anger toward her. This evidence shows that, as it appeared to B.S.P., the complainant's mother was not a person in authority. *See Dixon*, 624 S.W.2d at 374 (concluding the mother of a 16-year-old sexual assault victim was not a person in authority). Moreover, given the circumstances under which the promise was made, including the presence of others who could have called the police, it was unlikely to have influenced B.S.P. to speak untruthfully. For these reasons, we conclude that B.S.P.'s statement was not involuntary because it was induced by a promised benefit.

B.S.P. next argues his statement was involuntary because he was threatened or coerced by the complainant's mother. In support of this argument, B.S.P. cites to article 38.22, section 6, of the Texas Code of Criminal Procedure, which provides, in part, "In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions."[2] TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West Supp. 2014). Fact scenarios raising a state-law claim of voluntariness have included the following: (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have knowingly, intelligently, and voluntarily waived his rights;

---

[2]The trial of a juvenile case is governed by Chapter 38 of the Texas Code of Criminal Procedure. TEX. FAM. CODE ANN. § 51.17 (West 2014). Article 38.21 of the Texas Code of Criminal Procedure provides, "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter described." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005).

(3) the suspect lacked the mental capacity to understand his rights; (4) the suspect was intoxicated, and he did not know what he was signing and thought it was an accident report; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; and (6) the suspect was returned to the store he broke into for questioning by several persons armed with six-shooters. *Oursbourn v. State*, 259 S.W.3d 159, 172-73 (Tex. Crim. App. 2008). Youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22. *Id*. at 173. However, they are factors that a jury, armed with a proper instruction, is entitled to consider. *Id*.

According to B.S.P., his "youth, his mental impairment, and the effects of his prescription medication, and [the complainant's mother]'s severely threatening demeanor and language, followed by her promise not to call the police, coalesced into a forced confession." In making this argument, B.S.P. points to the evidence regarding his emotional and mental condition, his medical history, and the complainant's mother's behavior during the confrontation.

As to B.S.P.'s emotional and mental condition, a psychologist stated in a report that B.S.P. "presents as much younger than his stated age of 17." As to B.S.P.'s medical history, B.S.P.'s mother testified that B.S.P. suffered a brain injury at birth. As a result, B.S.P. was placed in special education-type classes. B.S.P. took medication for his brain injury and a sedative at night to help him sleep. B.S.P. also experienced seizures when he was fourteen and this caused him to regress developmentally. However, B.S.P. was not mentally retarded. B.S.P. attended school on a regular basis and knew right from wrong.

As to the complainant's mother's behavior during the confrontation, B.S.P.'s grandmother testified that the complainant's mother was extremely angry, very hostile, and her whole presence was threatening. The complainant's mother was screaming at B.S.P. and telling him she was "going to fucking kill [him]." She was holding a bat. B.S.P. was extremely disoriented because he

had taken sleeping pills that night and was awakened from a drug-induced sleep. After B.S.P. woke up, he was "scared to death" and "terrorized" by the complainant's mother. However, even according to B.S.P.'s grandmother, the complainant's mother never hit or punched B.S.P., and she never pushed him to the ground. At one point, when B.S.P. came around the table to where the complainant's mother was standing, the complainant's mother turned, bumped into B.S.P., and he lost his balance and fell.[3]

On the other hand, the complainant's mother testified that she was not holding a bat when she confronted B.S.P. She denied that she verbally or physically threatened B.S.P. She further denied that she shoved or hit B.S.P. She touched B.S.P.'s shirt one time. This happened when she lunged across the table and grabbed B.S.P.'s shirt. In response, B.S.P. pulled away from her and fell off the bench where he was sitting. However, this happened *after* B.S.P. admitted to the sexual assault.

At a suppression hearing, the trial court is the sole trier of fact. *In the Matter of V.M.D.*, 974 S.W.2d 332, 343 (Tex. App.—San Antonio 1998, pet. denied). It may choose to believe or disbelieve any or all of a witness's testimony. *Id*. In light of the inconsistent evidence regarding B.S.P.'s impairments and the complainant's mother's behavior, the trial court acted within its discretion in finding that B.S.P.'s statement was not involuntary as a matter of law because of threats or coercion. Furthermore, the jury was later instructed that it should not consider B.S.P.'s statement unless it believed beyond a reasonable doubt that the statement was freely and voluntarily made.

---

[3]B.S.P.'s grandmother also testified that B.S.P. was not forced to say anything to the complainant's mother, and that he could have chosen not to say anything to her.

**CONCLUSION**

We hold that the trial court did not abuse its discretion in denying the motion to suppress.

The trial court's judgment is affirmed.

Karen Angelini, Justice