**Opinion issued June 17, 2021**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00712-CV

_____

## IN THE MATTER OF J.J

---

### On Appeal from the 315th District Court
### Harris County, Texas
### Trial Court Case No. 2018-03598J

---

## O P I N I O N

After the trial court denied appellant J.J.'s motion to suppress, appellant pleaded "true" to petition for delinquency alleging capital murder. Thereafter, the trial court assessed a twenty-year determinate sentence. In a single issue, appellant contends that the trial court erred in denying his motion to suppress, asserting that

his confession was the result of custodial interrogation without the statutory warnings required by the Texas Family Code.[1] We affirm.

## BACKGROUND

Acting on information that appellant, a 14-year-old middle school student, might be involved in the murder of Tuyen Nguyen, Houston Police Department Detective J.T. Roscoe and his partner, Sergeant Holbrook, went to appellant's school to interview him. Houston Independent School District ("HISD") Officer Lofton retrieved appellant from his classroom and escorted him to meet with the police officers. Roscoe and Holbrook met Lofton and appellant near Lofton's office, and Lofton escorted them to nearby room for the interview. Roscoe testified that he and Sergeant Holbrook were never separated, and Sergeant Holbrook did not meet appellant in the hall without Roscoe before the interview started.

Roscoe described the interview room as rectangular office with a desk and table. Appellant sat in a chair two to three feet from the entrance; no one blocked the door, and the door was not locked. Appellant was not handcuffed. The officers offered appellant a snack or something to drink, but appellant declined. After some small talk about the Houston Rockets' game the night before, Sergeant Holbrook told appellant the following:

> Alright well we wanted to sit here and talk to you. Now at the end of this interview, whatever—we wanted to sit here and talk to you and if

---

[1] *See* TEX. FAM. CODE § 51.095 ("Admissibility of a Statement of a Child").

you want to sit and talk to us that would be great. At the end of the interview you're going back to class. Okay? There's no warrant for your arrest, okay? You're not going to jail.

Appellant responded, "Yes, sir." Appellant appeared relaxed and calm during the interview, which the officers recorded. The officers explained that they wanted to talk with appellant and get his side of the story because other witnesses they had interviewed were "putting [appellant] in something." Appellant asked what the officer meant by "putting [him] in stuff," and Holbrook began discussing the shooting of an Asian woman during a robbery. Appellant admitted that he intended to rob the woman, but claimed that:

> We were riding around that night. Shooting. It was an accident. Like the gun went off. Like the trigger wasn't even pulled. Like it was a faulty gun or something. The trigger wasn't even pulled. I didn't even know the gun was loaded.

At the conclusion of the interview, which lasted approximately 18 minutes, the officers did not handcuff or arrest appellant. The officers told appellant to go back to class, but to make sure that he checked in with Officer Lofton before returning to class so that he would not get in trouble for wandering in the halls.

Detective Roscoe testified that, when they told appellant that "if you want to sit and talk to us that would be great" and that "there's no warrant for your arrest . . . [y]ou're not going to jail," appellant was made aware that he was not being arrested and could terminate the interview and leave at any time. Roscoe acknowledged that he never used the words, "you are free to leave." Appellant

3

seemed comfortable with the officers and did not indicate that he did not understand the proceedings. Appellant did not ask to leave and did not ask to call his mother. Appellant was never restrained, was told that he was not under arrest, was told that "you're going back to class," and when the interview ended 18 minutes later, appellant, in fact, returned to class. Appellant was not arrested until five days after the interview at the school.

Appellant's version of the interview was quite different from Detective Roscoe's version. Appellant testified that HISD Officer Lofton came to get him from class, and that twice he asked Lofton if he could call his mother and was not allowed to do so. Contrary to Detective Roscoe's testimony, appellant testified that Roscoe was already in the interview room and that only Sergeant Holbrook came into the hall to meet him and Lofton. Appellant claimed that, before the recording began, he asked Sergeant Holbrook again if he could call his mother and was not allowed to do so. Appellant testified that he took the chair nearest the door, but that Roscoe's seat was blocking the door and appellant could not leave. Appellant testified that he did not understand that he was free to leave, or he would have asked to leave. He testified that the officers did not ask him which grade he was in, but the recording clearly shows that Holbrook, in fact, asked appellant early in the interview which grade he was in. Appellant testified that when the officers said that if he wanted to talk to him that would be great, he responded

4

"yes" because he understood that he was not going to jail, but he did not understand that he did not have to talk to them. Appellant also stated during his testimony that he did not answer all of the officers' questions, and when asked if "[he] felt like [he] could have not answered the questions," appellant responded, "Yes, ma'am," but also stated that he "still felt uncomfortable there[.]" At another point in his testimony, appellant stated that even though he did not know that he could have refused to answer questions, he could have told the officers "I don't know or I don't remember." Appellant acknowledged that, once he entered the interview room and the recording was started, he never asked to leave or to call his mother.

Appellant testified that Officer Roscoe was lying when he said that no one was blocking the door, when he claimed that the two officers never separated, and when he said that Holbrook never met with appellant alone in the hallway. Appellant also claimed that, while alone with Holbrook, the sergeant told appellant that "if I didn't [talk to them] I would be going to jail[.]"

**MOTION TO SUPPRESS**

*Standard of Review*

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *see also In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002) (standard of review for

rulings on motion to suppress is same in juvenile cases as in adult criminal proceedings). We review the trial court's factual findings under an abuse of discretion standard but conduct a de novo review of the trial court's application of law to those facts. *Turrubiate*, 399 S.W.3d at 150; *see also State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997).

When, as here, no findings of fact were requested or filed, we must view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *In re R.J.H.*, 79 S.W.3d at 7. We will sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *In re M.I.S.*, 498 S.W.3d 123, 130 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Stated differently, and as the Texas Court of Criminal Appeals has instructed, "appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of credibility and demeanor." *Ross*, 32 S.W.3d at 856 (quoting Guzman, 955 S.W.2d at 89).

*Applicable Law*

A juvenile's oral statement made as a result of custodial interrogation without the benefit of a magistrate's warning is inadmissible at trial. *See* TEX. FAM. CODE §

51.095(a)(5), (b)(1); *see also* TEX. CODE CRIM. PROC. art. 38.22 § 3. But, section 51.095 does not preclude admission of a juvenile's statement if the statement does not stem from custodial interrogation. *See* TEX. FAM. CODE § 51.095(b), (d); *Matthews v. State*, 513 S.W.3d 45, 62 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *see also Laird v. State*, 933 S.W.2d 707, 713 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (discussing prior version of statute and explaining that it "allows an oral statement to be admitted if it is not in response to custodial interrogation").

"[C]ustodial interrogation is questioning that is initiated by law enforcement after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *Delacerda v. State*, 425 S.W.3d 367, 386 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). To determine whether an individual is in custody, we focus on the objective circumstances of the questioning, not on the subjective views of either the interrogating officers or the person being questioned. *See Stansbury v. California*, 511 U.S. 318, 322 (1994); *In re D.J.C.*, 312 S.W.3d 704, 712 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We also consider whether, based upon the objective circumstances, a reasonable child of the same age would believe that his freedom of movement was significantly restricted. *Jeffley v. State*, 38 S.W.3d 847, 855 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

The Court of Criminal Appeals has established four general situations that may constitute custody: (1) if the suspect is physically deprived of his freedom in any significant way; (2) if a law-enforcement officer tells the suspect not to leave; (3) if a law-enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the suspect and the law-enforcement officer did not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 293–94 (Tex. Crim. App. 2009); *Dowthitt*, 931 S.W.2d at 255. In the fourth *Dowthitt* situation, the officer's knowledge of probable cause must be manifested to the suspect, or by the suspect to the officer. *Id.*, 931 S.W.2d at 255. In all four situations, including the fourth *Dowthitt* situation, there must be a restriction of freedom of movement that is tantamount to an arrest. *See id.* We consider the totality of circumstances surrounding an interrogation to determine whether the suspect was in custody during the interrogation. *See id.* With these principles in mind, we turn to the circumstances surrounding the questioning of appellant.

*Analysis*

Appellant relies on the fourth *Dowthitt* situation, arguing that "Officers had probable cause to arrest Appellant based upon the information they had received [from other witnesses] prior to the interview," and that "Appellant would have also become aware of the Officers['] probable cause to arrest him based upon the

8

statements that the Officers made during the course of the interview, despite the Officers['] statements that Appellant was not going to jail." However, "situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Id.* The State contends that "[a] reasonable person would not have believed himself to be in custody when police spoke to him at school, and told him he would return to class, was not under arrest, and was not going to jail."

Thus, the issue we must decide is whether a reasonable 14-year-old child would have believed his freedom of movement was restrained to the degree associated with a formal arrest. *See Jeffley*, 38 S.W.3d at 855.

In *Martinez v. State*, the 15-year-old defendant, after being informed by police officers that he could drive himself or be transported to the police station, agreed to accompany the officers to the station. 131 S.W.3d 22, 33 (Tex. App.—San Antonio 2003, no pet.). The defendant's mother accompanied her son to the police station, where they were placed in separate rooms. *Id.* The detective told the defendant that "no matter what he said, he would not be arrested that day." *Id.* The defendant acknowledged that he was told he would be brought home after the interview. *Id.* The defendant was never handcuffed. *Id.* After being told that another witness had provided a statement, the defendant agreed to tell the detective what he knew. *Id.*

9

After giving his statement, the defendant left the interview room, rejoined his mother, and they were taken home by police. *Id.* An arrest warrant was issued, and the defendant was arrested the next day. *Id.* The court concluded that "[t]he fact that [the defendant] acted upon the invitation of the police and was never threatened to be forcibly taken indicates that his movement was not restrained to the degree associated with a formal arrest." *Id.*

In the case *In re J.W.*, a police officer working at a high school football game received information from a witness that the defendant had the witness's camera case. 198 S.W.3d 327, (Tex. App.—Dallas 2006, no pet.). The officer located the juvenile defendant in the stands and asked about the camera case on his belt. *Id.* at 329. The juvenile said that he got it during the game from a "guy named Mike." *Id.* The officer confiscated the camera and later matched its serial number to the camera taken from the witness, and the defendant was arrested the next week. *Id.* In a motion to suppress, the defendant complained that he was in custody when questioned by the officer at the football game. *Id.* at 330. The court of appeals concluded that, even though the defendant was confronted by two uniformed officers with guns and questioned, he was not in custody. *Id.* at 331. The court noted that "he was not arrested, handcuffed, or restrained in any way . . . [h]e was not placed in a patrol car or taken to the police station for questioning . . . [h]e never asked to go home or asked for his mother or an attorney . . . [r]ather, he answered [the officer's] questions

and turned over the camera." *Id.* Thus, the court concluded that "a reasonable sixteen-year-old in [the defendant's] circumstances would have felt able to end the questioning, particularly since the officers did nothing to restrain or restrict [the defendant's] movement." *Id.*

Like the defendants in *Martinez* and *J.W.*, we conclude that, under the circumstances presented in this case, the trial court did not err by concluding that a reasonable 14-year-old child would not have believed his freedom of movement was restrained to the degree associated with a formal arrest. Appellant was never restrained or handcuffed. The door to the room in which appellant was question was unlocked. Appellant was nearest the door, and his access to the door was not restricted.[2] The officers told appellant "*if you want to* sit and talk to us that would be great." Such language indicated that appellant could choose whether he wanted to sit and talk or not. Appellant was told that he was not under arrest,[3] there was no warrant for his arrest, and he would return to his classroom after the interview. The

---

[2] Although appellant testified that Officer Roscoe was blocking the door, Roscoe testified otherwise. The trial court, as the factfinder, was entitled to believe Roscoe and disbelieve appellant. *See id.*

[3] Although appellant claimed that Sergeant Holbrook, outside the presence of Officer Roscoe, told appellant that he had to talk to the officers or he would be arrested, Detective Roscoe testified that they specifically told appellant he was not under arrest and would be returning to class. The recorded statement supports Roscoe's testimony and the trial court, as factfinder, was entitled to believe Roscoe and disbelieve appellant. *See id.*

interview lasted only 18 minutes, after which appellant was allowed, as promised, to return to class. Appellant never asked to speak to his mother[4] or an attorney, nor did he indicate that he did not wish to talk to the officers. In fact, appellant asked questions of the officers about what the other witnesses had said about the shooting.

When the circumstances show, as here, that a person is acting upon the invitation, urging, or request of police officers without any threat or coercion by the officers, that person is acting voluntarily and is not in custody. *See, e.g., Nickerson v. State*, 312 S.W.3d 250, 256 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see also Delacerda*, 425 S.W.3d at 386–88 (noting that defendant voluntarily went with officers into police station to homicide division office for questioning and that merely being questioned at stationhouse, by itself, does not constitute custody); *see also Estrada v. State*, 313 S.W.3d 274, 295 (Tex. Crim. App. 2010) (holding defendant not in custody when told he could leave, and did, without being arrested),

---

4    Although appellant testified that he asked to speak to his mother three times, all outside the presence of Officer Roscoe, Roscoe testified that he and Sergeant Holbrook were never separated and appellant never asked to speak to his mother. Again, we afford almost total deference to the factfinder's resolution of this credibility issue. *See Ross*, 32 S.W.3d at 856 (quoting *Guzman*, 955 S.W.2d at 89) ("[A]ppellate courts . . . should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of credibility and demeanor.").

*Gonzales v. State*, 4 S.W.3d 406, 415–16 (Tex. App.—Waco 1999, no pet.) (holding defendant not in custody, noting that defendant was released after questioning).

In short, appellant's freedom of movement was not restrained to the degree associated with a formal arrest. *See Delacerda*, 425 S.W.3d at 386–88; *Nickerson*, 312 S.W.3d at 256. Thus, he was not in custody. Under these circumstances, the trial court did not err in denying appellant's motion to suppress.

We overrule appellant's sole issue.

### CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.

Goodman, J. dissenting.

Publish. TEX. R. APP. P. 47.2(b)