**Affirmed and Memorandum Opinion filed June 11, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00041-CV

---

## IN THE MATTER OF J.K.

---

**On Appeal from the County Court at Law No. 4
Fort Bend County, Texas
Trial Court Cause No. 17-CJV-021351**

---

## M E M O R A N D U M   O P I N I O N

Appellant J.K., a juvenile, appeals from the trial court's adjudication order finding that he engaged in delinquent conduct by committing aggravated robbery.[1] Appellant argues (1) the trial court erred in denying his motion to suppress, and (2) the trial court's findings are not supported by legally sufficient evidence. For the reasons below, we affirm.

---

[1] Appellant was fifteen years old at the time of the offense. To protect the identity of minors involved in this case, the minors, the minors' parents, and other family members of the minors are identified by aliases. *See* Tex. R. App. P. 9.8(c)(1)(A)-(B), 9.9(a)(3).

BACKGROUND

Appellant was arrested for aggravated robbery in connection with a stolen Xbox. Appellant pleaded "not true" to the allegations and proceeded to a bench trial.

Complainant E.T., a seven-year-old girl, testified at Appellant's trial.[2] E.T. was home alone at her family's apartment the afternoon of August 19, 2017, when an intruder "knocked a lot of times" on the apartment door before breaking in. E.T. testified the intruder was carrying a long black gun with "a little red on the top of the gun." E.T. said the intruder told her something in a "mean voice" before walking into her seventeen-year-old brother's bedroom and stealing her brother's Xbox. The intruder left the apartment shortly afterwards.

Describing the intruder, E.T. testified he was wearing black, blue, and red clothing, carrying a blue bag, and covering part of his face with a bandana. E.T. stated the intruder's skin was "kind of dark, but . . . a little light," and said his skin color was "peach, but darker."

When the intruder broke into the apartment, E.T. was on the phone with her mother, Tina, who was at work. Testifying at Appellant's trial, Tina stated she could hear someone knocking on the door while she was on the phone with E.T. Tina then heard a "loud noise" and "a louder voice like someone broke in." E.T. ended the phone call and Tina called the apartment office, letting them know someone had broken into the apartment. Tina left her job and drove to the apartment.

Joshua Grice, an employee at the apartment complex, answered Tina's phone call and ran to the family's apartment. When Grice got to the apartment, the

---

[2] E.T. was six years old at the time of the offense.

2

front door was cracked open and the door's locking mechanism was broken. Grice called out but no one responded. Grice walked away from the apartment building towards the complex's fence line and observed a "younger black man" with a black and blue backpack walking away from the complex. Grice testified the individual was wearing a black shirt and black shorts and that a "bat or stick" was protruding out of the backpack.

Grice walked back to the family's apartment and found E.T. hiding underneath a blanket in the master bedroom. E.T. told Grice that a man entered the apartment carrying a gun and repeatedly asked E.T., "Where is my weed?" E.T. told Grice the man was wearing all black and covering his face. Grice called 911 and two police officers, Deputy Christopher Arias and Detective Jessip Murphy, arrived at the family's apartment.

Before the officers' arrival, Tina picked up E.T. from the apartment and left to get her son, V.T., from his friend's house. Tina, E.T., and V.T. returned to the apartment approximately ten minutes after the officers' arrival. Tina and V.T. spoke to the officers and, at Appellant's trial, acknowledged they initially lied to the officers because they did not want to admit E.T. was home alone. Tina and V.T. testified that they eventually told the officers the "true version" of where they were when the apartment was broken into: Tina was at work and V.T. was staying at a friend's house.

Testifying at Appellant's trial, Deputy Arias stated that E.T. told him "a bad man had entered or came into the resident's apartment." Deputy Arias asked E.T. whether the intruder was carrying a weapon and E.T. indicated the intruder was carrying a gun "like the duty weapon [Deputy Arias] had on [his] hip at the time." Describing E.T.'s demeanor, Deputy Arias stated she "appeared as if a traumatic event had just occurred."

3

The officers also spoke to V.T. and asked him if he knew who may have been responsible for breaking into the apartment and taking the Xbox. V.T. told the officers about an incident several weeks before during which he and a friend were smoking marijuana in the apartment complex parking lot when they were approached by a young, African-American man. The young man identified himself as Appellant and the boys exchanged information about the high schools they attended. V.T. testified that he and Appellant attended the same school. V.T. said Appellant was acting "suspicious" that evening and was "just walking around in circles" at the apartment complex.

After speaking with the family, Detective Murphy contacted the Fort Bend school district to get Appellant's information and address. At 9:45 p.m. that evening, Detective Murphy and another detective arrived at Appellant's address. The detectives knocked at Appellant's front door for about 5-10 minutes before Appellant answered. Appellant said he was home alone and the detectives called Appellant's mother and "gave her a rundown of what was happening." Appellant's mother came home and gave the detectives consent to search the house. In an upstairs room, the detectives found marijuana and an Xbox with a serial number matching the system stolen from V.T.'s room. The detectives questioned Appellant about the Xbox and, according to Detective Murphy, Appellant gave different accounts for how he came to possess the Xbox before eventually admitting that he took it.

Appellant was the last witness to testify at his trial and stated that, the day before the robbery, V.T. had messaged him about buying marijuana. Appellant arrived at V.T.'s apartment on August 17, 2019, and knocked for 5-10 minutes. After nobody answered, Appellant testified that he kicked in the door and entered the apartment. Appellant said he carried a baseball bat in his bag but left the bat

4

outside of the apartment when he entered.

Appellant saw E.T. on the phone when he entered the apartment and said he did not speak to her. Appellant walked into V.T.'s bedroom and took marijuana and an Xbox. Appellant left the apartment and walked away from the apartment complex. Appellant testified that he "probably" was the person Grice saw walking away from the complex.

During his testimony, Appellant did not deny that he entered the apartment. He stated his intent was to steal marijuana. Appellant said he did not carry a gun when he entered the apartment. Appellant stated he did not talk to E.T. or make any threats toward her. Appellant said he was wearing dark clothing and a bandana over his face when he entered the apartment.

After closing statements, the trial court found beyond a reasonable doubt the following allegation of aggravated robbery:

> That [Appellant], on or about August 9, 2017, in Fort Bend County, Texas, did then and there while in the course of committing theft of property owned by [E.T.] and with intent to obtain and maintain control of the property, intentionally and knowingly threaten or place [E.T.] in fear of imminent bodily injury or death, and the [Appellant] did then and there use and exhibit a deadly weapon, to-wit: a firearm; and that this act is a violation of section 29.03 of the Penal Code.

The trial court made the following finding in response to a special issue submitted as to the use or exhibition of a deadly weapon:

> That [Appellant], while in the course of committing the delinquent conduct of AGGRAVATED ROBBERY, did then and there personally use or exhibit a deadly weapon, to wit: a firearm, in the commission of the Aggravated Robbery.

Appellant timely appealed.

5

In two issues, Appellant asserts (1) the trial court erred in denying his motion to suppress a confession made during a custodial interrogation, and (2) the evidence is legally insufficient to support the trial court's aggravated robbery findings.

## I.     Motion to Suppress

Appellant asserts the trial court erred by denying his motion to suppress the confession he made after the detectives discovered the marijuana and Xbox during their search of his home.  Appellant argues this confession was inadmissible because it was made during a "custodial interrogation" and no procedural safeguards were used to secure Appellant's privilege against self-incrimination.

Appellant's motion to suppress was filed pre-trial and re-urged by Appellant's counsel during Detective Murphy's trial testimony.  Both parties took Detective Murphy on voir dire and Detective Murphy recounted in detail the events that took place at Appellant's house.

According to Detective Murphy, he and the other detective were at Appellant's house for approximately 1.5 hours.  Detective Murphy and his colleague were both wearing their "relaxed uniform" of a black polo shirt with tan pants and both detectives carried their service weapons.  After Appellant's mother arrived at the house, the detectives entered the house and Detective Murphy interviewed Appellant in the kitchen.  Appellant denied any involvement in the robbery and said he had been at his house all day.  Appellant's mother signed a written form consenting to a search of her home and Detective Murphy asked Appellant if there was anything in his room the detectives needed to know about.  Appellant told the detectives there was a pipe in his room.

The detectives found marijuana and the missing Xbox upstairs; Detective Murphy acknowledged that the investigation "focused" on Appellant after this point. Detective Murphy again questioned Appellant and Appellant told Detective Murphy a friend "had brought [the Xbox] to his house" but he "couldn't explain who the friend was or anything like that." Detective Murphy raised his voice and told Appellant that he and his mother "could go to jail for this." Detective Murphy described the scene as "kind of a fiasco" with both Detective Murphy and Appellant's mother "yelling" at Appellant. Appellant kept "hem hawing around" and Detective Murphy "finally just raised [his] voice and yelled at [Appellant], 'Tell me. Tell me where you got it from.'" Appellant responded: "Because I took it, sir."

Detective Murphy testified that Appellant was not read his *Miranda* warnings or any warnings under the Texas Family Code. Appellant was not told that he "was free to leave, or that he didn't have to answer any of the[] questions." Appellant also was not handcuffed during the questioning. According to Detective Murphy, Appellant did not indicate that he wanted to stop talking to the detectives.

We assume without deciding the trial court erred in denying Appellant's motion to suppress the confession he made during Detective Murphy's questioning. Because the improper admission of a juvenile's statement made during a custodial interrogation implicates the constitutional right against self-incrimination, it is constitutional error to admit the statement into evidence. *Marsh v. State*, 140 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Jeffley v. State*, 38 S.W.3d 847, 858 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Accordingly, we reverse unless the record establishes beyond a reasonable doubt that the admission of Appellant's confession in response to Detective Murphy's questioning did not contribute to Appellant's conviction. *See*

*Jeffley*, 38 S.W.3d at 858 (citing Tex. R. App. P. 44.2(a)).

In our application of this standard, we do not focus on the propriety of the outcome of Appellant's trial. *See Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); *see also Marsh*, 140 S.W.3d at 908. We focus instead on the error and its possible impact in light of the existence of other evidence. *Marsh*, 140 S.W.3d at 908. We consider the following factors: (1) the source of the error; (2) the nature of the error; (3) whether the error was emphasized and its probable collateral implications; (4) the weight a factfinder would probably place on the error; and (5) whether declaring the error harmless encourages the State to repeat it with impunity. *Id*. at 908-09 (citing *Wilson v. State*, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996)). "Though no one factor is dispositive, the existence and severity of these factors are indicative of the harm caused by the admission of the oral statements." *Jeffley*, 38 S.W.3d at 859. Having identified the source and nature of the error, we turn to the remaining factors.

Here, the substance of Appellant's confession to Detective Murphy was established by other testimony and evidence, including (1) E.T.'s and Grice's description of the intruder; (2) V.T.'s identification of Appellant as a "suspicious" person; and (most importantly) (3) the detectives' discovery of marijuana and the missing Xbox during their consensual search of Appellant's house. Given this testimony and evidence, it is improbable the factfinder placed much weight on Detective Murphy's testimony regarding Appellant's confession. *See Marsh*, 140 S.W.3d at 909-10 (erroneous admission of juvenile's statement harmless error where other testimony and evidence "established the same facts as his unrecorded statement"); *see also Jeffley*, 38 S.W.3d at 858-60 (erroneous admission of juvenile's statement harmless error where the defendant's "written statement and other testimony" supported conviction).

Moreover, the State did not place significant emphasis on Appellant's confession to Detective Murphy. Referencing Appellant's testimony at trial, the prosecutor asserted there "really wasn't much issue" regarding Appellant's commission of the theft. The prosecutor's closing argument instead focused on E.T.'s testimony and her recollection regarding the intruder's gun. In light of the other evidence supporting the conviction as well as Appellant's testimony, the collateral implications of the erroneous admission of Appellant's confession were limited. *See Marsh*, 140 S.W.3d at 908.

Finally, "[g]iven the strict requirements upon law enforcement officers in the family code regarding interrogation of juveniles, it is unlikely that declaring the admission of the oral statements harmless would encourage the State to repeat the error with impunity." *Jeffley*, 38 S.W.3d at 860. Accordingly, we find the record establishes beyond a reasonable doubt that the admission of Appellant's confession to Detective Murphy did not contribute to his conviction. *See* Tex. R. App. P. 44.2(a). We overrule Appellant's first issue.

## II.       Sufficiency of the Evidence

In his legal sufficiency challenge, Appellant argues (1) the State failed to prove Appellant stole property owned by E.T. as alleged in the indictment; (2) no evidence supports the trial court's aggravated robbery findings; and (3) the State failed to prove identification. We review the applicable legal standard before analyzing Appellant's evidentiary challenges.

### A.       Standard of Review

For a legal sufficiency challenge, we review all of the evidence in the light most favorable to the verdict to determine whether a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v.*

*State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010); *see also Criff v. State*, 438 S.W.3d 134, 137 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). The factfinder is the sole judge of the credibility of witnesses and is free to believe or disbelieve all or part of a witness's testimony. *Brooks*, 323 S.W.3d at 902. We give "deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

### B.    Property Owned by E.T.

In its "Judgment and Order of Adjudication," the trial court found Appellant "commit[ed] theft of property owned by [E.T.] . . . with intent to obtain and maintain control of the property." Pointing out that the Xbox belong to V.T. and was not used by six-year-old E.T., Appellant argues the State "failed to prove Appellant stole property owned by [E.T.]."

The name of the appropriated-property's owner is not a substantive element of the theft offense. *Byrd v. State*, 336 S.W.3d 242, 251 (Tex. Crim. App. 2011). But the Code of Criminal Procedure requires the State to allege the name of the owner of property in its charging instrument. *Id*.; *see also* Tex. Code Crim. Proc. Ann. art. 21.08 (Vernon 2009).

Under Texas pleading rules, ownership may be alleged in either the actual owner or a special owner. *Byrd*, 336 S.W.3d at 251-52. "A special owner is a person who has actual custody or control of property that belongs to another." *Id*. at 252. To eliminate the distinction between actual and special ownership, the legislature expansively defined "owner" and included in the definition a person

10

who has title to the property, possession of the property, or a greater right to possession of the property than the defendant. *See* Tex. Penal Code Ann. § 1.07(a)(35)(A) (Vernon Supp. 2018); *see also Garza v. State*, 344 S.W.3d 409, 413 (Tex. Crim. App. 2011).

The evidence, viewed in the light most favorable to the challenged finding, supports the trial court's conclusion that E.T. had a greater right to possession of the Xbox than Appellant. V.T. testified that he owned the missing Xbox that was recovered at Appellant's house. V.T. and E.T. testified that they lived together at the apartment with their mother. E.T.'s status as a resident at the apartment with her brother gives her "a greater right to possession" of the Xbox than Appellant, who admittedly broke into the apartment and stole it. The evidence is sufficient to support the trial court's finding regarding ownership of the stolen property.

## C. Aggravated Robbery

A person commits the offense of aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2019). A person commits robbery if, "in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id*. § 29.02(a) (Vernon 2019). "Theft" is defined as "unlawfully appropriat[ing] property with intent to deprive the owner of property." *Id*. § 31.03(a) (Vernon 2019). Appellant argues the evidence is legally insufficient to support the trial court's findings that (1) under section 29.02(a)(2) Appellant "intentionally and knowingly threaten[ed] or place[d] [E.T.] in fear of imminent bodily injury or death;" and (2) under section 29.03(a)(2) Appellant "personally use[d] or exhibit[ed] a deadly weapon, to wit: a firearm, in the commission of the

11

Aggravated Robbery."

### 1.     Section 29.02(a)(2)

We examine first the trial court's finding under section 29.02(a)(2) that Appellant "intentionally and knowingly threaten[ed] or place[d] [E.T.] in fear of imminent bodily injury or death." Appellant argues there was no evidence to support this finding.

Because the trial court could have found Appellant guilty for either of these culpable mental states, we need only address the less culpable mental state of knowingly. *See, e.g., Howard v. State*, 333 S.W.3d 137, 140 (Tex. Crim. App. 2011). Under the Penal Code, a defendant acts "knowingly" with respect to "a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." Tex. Penal Code Ann. § 6.03(b) (Vernon 2011). "Knowingly" does not refer to the defendant's knowledge of the actual results of his actions, but instead the knowledge of what results his actions are reasonably certain to cause. *Howard*, 333 S.W.3d at 140.

Proving robbery by showing the defendant placed another person in fear does not require an actual threat. *Burton v. State*, 230 S.W.3d 846, 852 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Instead, "[t]he crucial inquiry in determining whether a threat has been made is whether the assailant acted in such a manner as would, under the circumstances, portend an immediate threat of danger to a person of reasonable sensibility." *Sifuentes v. State*, 494 S.W.3d 806, 811 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (internal quotation omitted).

Viewing the evidence in the light most favorable to the trial court's section 29.02(a)(2) finding, legally sufficient evidence supports the finding that Appellant "knowingly threaten[ed] or place[d] [E.T.] in fear of imminent bodily injury or

12

death."

- Appellant testified that, after he "kicked through the apartment door," he saw E.T. under a blanket in the master bedroom. After seeing E.T., Appellant went into V.T.'s bedroom and took marijuana and an Xbox before exiting the apartment.

- According to E.T., Appellant was wearing a bandana over his face and carrying a long black gun when he walked into the apartment and told her something in a "mean voice" before walking into V.T.'s bedroom. E.T. said she "got [her] blanket and [she] hide under it" because she "was very scared."

- Tina testified that, while she was on the phone with E.T., she heard someone speak in "a louder voice like someone broke in."

- Grice testified that, after the incident, E.T. told him a man entered the apartment carrying a gun and repeatedly asked E.T., "Where is my weed?"

- According to Deputy Arias, after the incident E.T. had "appeared as if a traumatic event had just occurred."

This evidence supports the trial court's finding that Appellant acted in such a manner that would, under these circumstances, portend an immediate threat of danger to a person of reasonable sensibility. *See id*.; *Burton*, 230 S.W.3d at 852.

We overrule Appellant's challenge to the trial court's section 29.02(a)(2) finding.

### 2. 29.03(a)(2)

We turn now to the trial court's finding under section 29.03(a)(2) that Appellant "personally use[d] or exhibit[ed] a deadly weapon, to wit: a firearm, in the commission of the Aggravated Robbery." Challenging this finding, Appellant argues that "he maintained at all times that he was never in possession of a firearm" and "[t]he only evidence that he even had a firearm" came from six-year-old E.T.

A deadly weapon is "used" when it is employed or utilized to achieve its purpose and is "exhibited" if it is consciously shown or displayed during the commission of an offense. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989). A victim's testimony concerning the presence of a gun generally is sufficient to support a finding on the presence of a deadly weapon. *See Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Alexander v. State*, No. 14-09-00574-CR, 2010 WL 1992829, at *2 (Tex. App.—Houston [14th Dist.] May 20, 2010, pet. ref'd) (mem. op., not designated for publication).

Here, legally sufficient evidence supports the trial court's finding that Appellant "personally use[d] or exhibit[ed] a deadly weapon, to wit: a firearm, in the commission of the Aggravated Robbery." E.T. testified that an intruder entered the apartment carrying a long black gun with "a little red on the top of the gun." On cross-examination, E.T. acknowledged that she had not "seen lots of guns" but stated that her mom owns "a small gun." Recounting his conversation with E.T. after the incident, Grice testified that E.T. told him an intruder had entered the apartment and was carrying a gun. Deputy Arias also testified about his conversation with E.T. after the incident and stated that she indicated the intruder was carrying a gun "like the duty weapon [Deputy Arias] had on [his] hip at the time." E.T.'s testimony, combined with Grice's and Deputy Arias's descriptions of their conversations with E.T. after the incident, are sufficient to support the trial court's section 29.03(a)(2) finding. *See Bradley*, 359 S.W.3d at 917; *Alexander*, 2010 WL 1992829, at *2.

Appellant argues E.T. "only saw a glimpse of him when she was not hiding under her blanket" and points out inconsistencies in her other testimony, such as E.T.'s description of the intruder's skin color as "peach, but darker." But the trial

14

court, as the factfinder, was the exclusive judge of the witnesses' credibility and was charged with resolving any inconsistencies or contradictions in the evidence. *See Brooks*, 323 S.W.3d at 902; *Hooper*, 214 S.W.3d at 13. We defer to the trial court's resolution of evidentiary conflicts and its weighing of witnesses' credibility and testimonies. *See Brooks*, 323 S.W.3d at 902; *Hooper*, 214 S.W.3d at 13. All of the evidence, viewed in the light most favorable to the challenged finding, supports the trial court's section 29.03(a)(2) deadly-weapon finding.

Appellant also asserts the detectives did not find a gun when they searched his house after the incident. But the failure to recover a weapon does not nullify other evidence supporting the trial court's deadly-weapon finding. *See, e.g., Johnson v. State*, No. 14-02-00901-CR, 2003 WL 22012693, at \*2 (Tex. App.—Houston [14th Dist.] Aug. 26, 2003, pet. ref'd) (not designated for publication); *Wysner v. State*, No. 05-00-02014-CR, 2001 WL 1329315, at \*2 (Tex. App.—Dallas Oct. 30, 2001, no pet.) (not designated for publication).

We overrule Appellant's challenge to the trial court's section 29.03(a)(2) finding.

## D.     Identification

Arguing the State failed to prove Appellant was the person who committed the robbery, Appellant argues "[t]he only eyewitness testified that the armed robber was white in that he had peach-colored skin."

E.T. testified that the intruder's skin color was "peach, but darker." Appellant is an African-American boy. Other evidence in the record supports the trial court's finding that Appellant committed the charged offense:

- Grice testified that he observed a "younger black man" walking away from the apartment complex shortly after he received the call from Tina reporting the robbery. Grice said the young man was wearing a

15

black and blue backpack with a "bat or stick" sticking out of the top.

- Responding to Deputy Arias's inquiry about who could have been responsible for the robbery, V.T. recounted his previous encounter with Appellant in the apartment complex's parking lot. V.T. said Appellant was acting "suspicious" that evening because he was "just walking around in circles" at the complex.

- In their search of Appellant's home, the detectives found an Xbox with a serial number matching the system stolen from V.T.'s bedroom.

- Detective Murphy testified that, after detectives found the missing Xbox, Appellant admitted taking the Xbox.

- Appellant testified that he kicked in the door to V.T.'s apartment and took marijuana and an Xbox from V.T.'s bedroom before leaving. Appellant testified that he "probably" was the person Grice saw walking away from the complex.

We defer to the factfinder's responsibility to fairly resolve conflicts in the evidence. Considering all evidence in the light most favorable to the verdict, legally sufficient evidence supports the trial court's finding that Appellant was the person who committed the charged offense.

We overrule Appellant's final issue.

## CONCLUSION

We overrule Appellant's issues on appeal and affirm the trial court's judgment.


/s/ Meagan Hassan
Justice


Panel consists of Justices Christopher, Hassan, and Poissant.


16